# CONSOLIDATED PROMISSORY NOTE
## ($800,000)

**THIS PROMISSORY NOTE** (this "**Note**"), is made as of the 6th day of August, 2013, between **724 Management LLC**, a limited liability company duly organized and validly existing and in good standing under the laws of the State of New York and having an office at 4402 3rd Avenue, Brooklyn, NY 11220 (the "**Borrower**"), and **Sovereign Bank, N.A.**, having an office at 551 Fifth Avenue, 26th Floor, New York, NY 10176 (together with its successors and assigns, the "**Lender**").

**WHEREAS**, Lender is the present owner and holder of that certain promissory note annexed hereto;

**WHEREAS**, this Note is secured by, inter alia, that certain Mortgage (the "**Mortgage**") given by Borrower, which Mortgage encumbers certain property located at 4402 3rd Avenue, Brooklyn, NY 11220 (the "**Premises**"), as more particularly described in the Mortgage;

**WHEREAS**, Borrower and Lender have agreed in the manner hereinafter set forth to state in their entirety the terms and provisions of the Note on the terms and conditions hereinafter set forth; and

**WHEREAS**, Lender and Borrower intend these Recitals to be a material part of this Note.

**NOW THEREFORE**, in consideration of the foregoing premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower and Lender agree as follows:

I. The parties hereto certify that the Borrower is indebted to the Lender in the principal amount of $800,000 (the "Existing Debt") and this Note evidences the Existing Debt.

II. This Existing Debt, and the obligations of Borrower hereunder, are hereby ratified and confirmed, and shall remain in full force and effect until the full performance and satisfaction of all obligations of Borrower under this Note.

# PROMISSORY NOTE

**Date of Note:**       August 6, 2013

**Principal Amount:**   $800,000

**Maturity Date:**      August 6, 2018

**Interest Rate:** An interest rate equal at all times to two and one-quarter (2.25%) percent per annum in excess of the rate of interest per annum (rounded upwards, if necessary, to the nearest 1/100 of 1%) of the one (1) month British Bankers Association LIBOR Rate ("**BBA LIBOR**") in effect on the first day of each LIBOR Interest Period (as hereafter defined) as published by Bloomberg (or such other commercially available source providing quotations of BBA LIBOR as designated by Lender from time to time) at approximately 11:00 A.M. (London time) 2 Banking Days prior to the first day of such LIBOR Interest Period for a term comparable to such LIBOR Interest Period; provided however, if more than one BBA LIBOR Rate is specified, the applicable rate shall be the arithmetic mean of all such rates. If, for any reason, such rate is not available, the term LIBOR Rate shall mean, for the LIBOR Interest Period applicable thereto, the rate of interest per annum (rounded upwards, if necessary, to the nearest 1/100 of 1%) determined by Lender to be the average rates per annum at which deposits in dollars are offered for such LIBOR Interest Period to major banks in the London Interbank market in London, England at approximately 11:00 A.M. (London time) 2 Banking Days prior to the first day of such LIBOR Interest Period for a term comparable to such LIBOR Interest Period. The Interest Rate shall be computed on an actual/360 day basis (i.e., interest for each day during which the Principal Amount, or any part thereof, is outstanding shall be computed at the Interest Rate divided by 360).

**LIBOR Interest Period:**

Initially, the first (1st) LIBOR Interest Period hereunder shall be the period commencing on the date hereof and ending on (and including) the last day of the calendar month in which this Note is dated. Thereafter, each LIBOR Interest Period shall commence on the first (1st) day of the calendar month immediately following the previous LIBOR Interest Period and shall end (and include) the last calendar day of each such calendar month; provided however, (i) if any LIBOR Interest Period would end on a day which is not a Business Day, such LIBOR Interest Period shall be extended to the next succeeding Banking Day (except that where the next succeeding Business Day falls in the next succeeding calendar month, then on the next preceding Banking Day), (ii) no LIBOR Interest Period shall extend beyond the Maturity Date of the Loan, and (iii) any LIBOR Interest Period that begins on the last Business Day of a calendar month (or on a day for which there is

no numerically corresponding day in the calendar month at the end of such LIBOR Interest Period) shall end on the last Business Day of the relevant calendar month at the end of such LIBOR Interest Period.

**Business Day:** Any day on which domestic and international transactions are carried on in the London Interbank Market and commercial banks are open for business in London, England and are neither required nor authorized to close in New York, New York.

**Event of Default:** Any of the following shall constitute an Event of Default, after the expiration of ten (10) days following the due date:

   a. Borrower fails to pay the principal of, or interest on, this Note, or any other amount payable under this Note, as and when due and payable;

   b. Borrower or any Third Party shall fail to pay when due any indebtedness for borrowed money owed to Lender;

Any of the following shall constitute an Event of Default, after the expiration of thirty (30) days written notice and an opportunity to cure within said thirty (30) days, which thirty (30) day period shall be extended if the Event of Default cannot be cured within said thirty (30) day period and Borrower is diligently attempting to cure same:

   a. Any representation or warranty made by Borrower or by any third party supporting or liable with respect to this Note (whether by guaranty, subordination, grant of security or any other credit support, a **"Third Party"**) in any document evidencing the obligations of Borrower or of a Third Party (this Note and such documents being the **"Facility Documents"**) or which is contained in any certificate, document, opinion, financial or other statement furnished at any time under or in connection with any Facility Document, shall prove to have been incorrect in any respect or as of the date made that would have a material adverse effect on Borrower's or such Third Party's ability to perform its obligations under the Facility Documents;

   b. Borrower or any Third Party shall fail to perform or observe any term, covenant or agreement contained in any Facility Document on its part to be performed or observed;

   c. Borrower or any Third Party:

1. shall generally not, or be unable to, or shall admit in writing its inability to, pay its material debts as such debts become due after allowance for payment term periods or cure periods; or

2. shall file a petition in bankruptcy or for any relief under any law of any jurisdiction relating to reorganization, arrangement, readjustment of debt, dissolution or liquidation; or (iii) shall have any such petition filed against it and the same shall remain undismissed for a period of 120 consecutive days; or

3. shall have had a receiver, custodian or trustee appointed for all or a substantial part of its property and the order, judgment or decree granting same shall have continued unstayed and in effect for a period of 120 days from date of entry;

d. Borrower or any Third Party shall cease doing business or die (except if a successor individual guarantor acceptable to the Lender in its reasonable discretion executes the Lender's form of Guaranty);

e. Any Third Party Facility Document shall at any time and for any reason cease to be in full force and effect or shall be declared null and void, or its validity or enforceability shall be contested by the relevant Third Party or such Third Party shall deny it has any further liability or obligation under any Facility Document;

f. Any security agreement (whether by Borrower or a Third Party) granting security for any Facility Document shall at any time and for any reason cease to create a valid and perfected and first priority security interest in and to the property purported to be subject to such agreement or shall cease to be in full force and effect or shall be declared null and void, or the validity or enforceability of any security agreement shall be contested by any party to such security agreement, or such party shall deny it has any further liability or obligation under such agreement or any such party shall fail to perform any of its obligations under such agreement;

g. Borrower shall have a judgment entered against it in excess of $100,000, which is not covered by insurance or bonded within thirty (30) days or fail to pay or cause tenant to pay or remit any tax when due;

h. Borrower shall grant any security interest in the Premises except in favor of Lender;

i. Any breach or violation of, or if a default or an Event of Default occurs under, any Interest Hedging Instrument;

j. Borrower or any Third Party shall fail to furnish financial information in form reasonably satisfactory to Lender or to permit inspection of its books and records; and

THEN, in any such case, upon written notice by the Lender, unless Borrower cures such Event of Default within the applicable cure period, the unpaid Principal Amount of this Note, together with accrued interest, shall become forthwith due and payable.

**Interest Hedging Instrument**  Any documentation evidencing any interest rate swap, interest "cap" or "Collar" or any other interest rate hedging device or swap agreement (as defined in 11 U.S.C. §101 et. seq.) between Borrower and Lender (or any affiliate of Lender), or any other interest rate protection agreement, foregoing currency exchange agreement, commodity purchase or option agreement or any other interest rate hedging device or swap agreement (as defined in 11 U.S.C. §101 et. seq.)

NOW, THEREFORE, FOR VALUE RECEIVED, BORROWER HEREBY PROMISES TO PAY to the order of Lender located at 551 Fifth Avenue, 26th Floor, New York, NY 10176, or at such other place as the holder hereof may from time to time designate in writing, in federal funds immediately available in New York, New York, the Principal Amount, and interest in arrears, on the outstanding Principal Amount on the sixth day of each month commencing on September 6, 2013. Borrower will pay the Principal Amount in sixty (60) consecutive monthly payments of principal and interest, based on a twenty five (25) year amortization. The said payments shall be due on the sixth day of each month commencing September 6, 2013. The monthly payment of principal and interest is as set forth on Schedule annexed hereto. On the Maturity Date, the unpaid principal amount of this Note, plus all accrued but unpaid interest, shall be immediately due and payable.

Borrower shall pay a late payment charge of four cents ($.04) for each dollar ($1.00) of each payment that is made more than ten (10) days after the due date thereof, which charge shall be due and payable with each such late payment. In the event of a default in payment following maturity (or earlier acceleration), the interest rate applicable to this Note shall be 3% above the rate then in effect.

Borrower has the right to make payments of principal, in whole or in part, at any time before they are due without penalty. Borrower shall notify Lender in writing when Borrower is making a prepayment. Any sums submitted as prepayment of the Principal Amount will first be applied to accrued interest and the remainder to reduce the principal owed on this Note. Any sums submitted as prepayment of the Principal Amount will not change the undersigned's obligation to make regular payments of interest and principal according to the terms of the Note. Any amount of the Note that is repaid and/or any Principal Amount that is

prepaid may not be re-borrowed. Borrower shall indemnify Lender, and hold Lender harmless from any loss, damages, liability, or expense which Lender may sustain or incur as a consequence of the making of a prepayment, whether by voluntary prepayment, acceleration or otherwise, on a day which is not the last day of a LIBOR interest period with respect thereto. With respect to such prepayment, such indemnification shall equal the excess, if any, of (i) the amount of interest which would have accrued on the amount so prepaid for the period from the date of such prepayment at the applicable rate of interest provided for herein over (ii) the amount of interest (as reasonably determined by Lender) which would have accrued to Lender on such amount by placing such amount on deposit for a comparable period with leading banks in the London interbank Eurodollar market. This covenant shall survive the termination of this Note, and the payment of the entire outstanding Principal Amount, all other unpaid indebtedness secured by the Mortgage.

Except as may be otherwise provided in the Mortgage, all monthly payments received by Lender hereunder shall be applied first, to the payment of accrued interest on the Principal Amount, second, to the reduction of the Principal Amount of this Note, and finally, the balance, if any, to the payment of any fees, costs, expenses or charges then payable by Borrower to Lender hereunder, under the Mortgage or under any other document executed and delivered by Borrower in connection with the loan evidenced by this Note.

Borrower agrees that if it fails to timely make any payment due under this Note or upon the happening of any Event of Default beyond any applicable notice and cure period, the outstanding Principal Amount, together with accrued interest and all other expenses, including, without limitation, reasonable and actual attorneys' fees, shall immediately become due and payable at the option of the holder of this Note, notwithstanding the Maturity Date. For purposes hereof, attorneys' fees shall include, without limitation, fees and disbursements for legal services incurred by the holder hereof in collecting or enforcing payment hereof whether or not suit is brought, and if suit is brought, then through all appellate actions.

In no event shall the total of all charges payable under this Note, the Mortgage and any other documents executed and delivered in connection herewith and therewith which are or could be held to be in the nature of interest exceed the maximum rate permitted to be charged by applicable law. Should Lender receive any payment which is or would be in excess of that permitted to be charged under any such applicable law, such payment shall have been, and shall be deemed to have been, made in error and shall thereupon be applied to reduce the principal balance outstanding on this Note.

Borrower waives demand, presentment for payment, notice of dishonor, protest and notice of protest of this Note.

Any notice, demand or request relating to any matter set forth in this Note shall be given in the manner provided for in the Mortgage.

Time is of the essence as to all dates set forth herein; provided, however, that whenever any payment to be made under this Note shall be stated to be due on a day that is not a Business Day, such payment shall be made on the next succeeding Business Day, and such extension of time shall in such case be included in the computations of payment of interest.

This Note may not be waived, changed, modified, terminated or discharged orally, but only by an agreement in writing signed by the party against whom enforcement of any such waiver, change, modification, termination or discharge is sought.

**BORROWER, AND BY ITS ACCEPTANCE HEREOF, LENDER, EACH HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVE ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS NOTE, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY BORROWER AND LENDER, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. BORROWER AND LENDER ARE EACH HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER.**

**BORROWER HEREBY EXPRESSLY AND UNCONDITIONALLY WAIVES, IN CONNECTION WITH ANY SUIT, ACTION OR PROCEEDING BROUGHT BY OR ON BEHALF OF LENDER ON THIS NOTE, ANY AND EVERY RIGHT BORROWER MAY HAVE TO (I) INJUNCTIVE RELIEF, (II) INTERPOSE ANY COUNTERCLAIM THEREIN (OTHER THAN COMPULSORY COUNTERCLAIMS), AND (III) HAVE THE SAME CONSOLIDATED WITH ANY OTHER OR SEPARATE SUIT, ACTION OR PROCEEDING. NOTHING HEREIN CONTAINED SHALL PREVENT OR PROHIBIT BORROWER FROM INSTITUTING OR MAINTAINING A SEPARATE ACTION AGAINST LENDER WITH RESPECT TO ANY ASSERTED CLAIM.**

This Note and the rights and obligations of the parties hereunder shall in all respects be governed by, and construed and enforced in accordance with, the laws of the State of New York (without giving effect to New York's principles of conflicts of law). Borrower hereby irrevocably submits to the nonexclusive jurisdiction of any New York State or Federal court sitting in the City of New York, County of New York, over any suit, action or proceeding arising out of or relating to this Note, and Borrower hereby agrees and consents that, in addition to any methods of service of process provided for under applicable law, all service of process in any such suit, action or proceeding in any New York State or Federal court sitting in the City of New York, County of New York, may be made by certified or registered mail, return receipt requested, directed to the Borrower at the address indicated below, or any new address provided by Borrower to Lender in writing in replacement thereof, and service so made shall be complete five (5) days after the same shall have been so mailed.

If this Note shall be executed by more than one Borrower, the singular shall include the plural and all the obligations and liabilities of each such party or person shall be joint and several.

Time for payment extended by law shall be included in the computation of interest.

No term or provision of this Note may be changed without the prior written consent of the Lender.

**IN WITNESS WHEREOF**, the Borrower has executed and delivered this Note on the Date of Note.

Address for Notices:

4402 3rd Avenue
Brooklyn, NY 11220

Borrower:

724 MANAGEMENT LLC

By: _Long Zhang_
Name: Long Liang Zhang
Title: Managing Member

## Allonge

Reference is made to the $800,000 Consolidated Promissory Note dated August 6, 2013 from 724 Management LLC, a New York limited liability company, (the "Note") payable to the order of Santander Bank, N.A. (f/k/a Sovereign Bank, N.A.). It is intended that this Allonge be attached to and made a permanent part of the Note.

Pay to the order of CL 45 MW Loan 1, LLC, without recourse, representations or warranties of any kind.

Executed this 30 day of March 2021.

Santander Bank, N.A.

By: Nicholas A. Rossini
Its: Senior Vice President